GEICO CORPORATION, Government Employees Insurance Company and Criterion Insurance Company, Plaintiffs,

v.

PENNSYLVANIA POWER & LIGHT COMPANY, Defendant.

McDONNELL DOUGLAS FINANCE CORPORATION, Plaintiff,

v.

PENNSYLVANIA POWER & LIGHT COMPANY, Defendant.

CNA ASSURANCE COMPANY OF CONNECTICUT, Plaintiff,

v.

PENNSYLVANIA POWER & LIGHT COMPANY, Defendant.

Nos. 86 Civ. 9461 (WCC), 86 Civ. 9947 (WCC) and 86 Civ. 9969 (WCC).

United States District Court,
S.D. New York.

July 2, 1987.

Breed, Abbott & Morgan, New York City, for plaintiff CNA Assur. Co. of Connecticut; David S. Patterson, of counsel.

Winston & Strawn, Chicago, Ill., for plaintiff CNA Assur. Co. of Connecticut; David S. Acker, Thomas R. Bearrows, of counsel.

Reid & Priest, New York City, for defendant Pennsylvania Power & Light Co.; Louis H. Willenken, Peter C. Williams, of counsel.

Cravath, Swaine & Moore, New York City, for plaintiffs GEICO Corp., Government Employees Ins. Co., Criterion Ins. Co., McDonnell Douglas Finance Corp., Peoples Sec. Life Ins. Co., Commonwealth Life Ins. Co. and Nat. Standard Life Ins. Co.; Rory O. Millson, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Defendant Pennsylvania Power & Light Company ("PP & L") has moved to stay these actions pending arbitration of plaintiffs' claims and to compel arbitration of plaintiffs' claims pursuant to the parties' contracts. For the reasons outlined below, defendant's motions are denied.

### Background

These three related lawsuits involve two privately placed issues of PP & L preferred stock. The first issue, 340,000 shares of 14% Series Preferred Stock ("the 14% Series") was sold on November 15, 1982, and the second issue ("the 11% Series") was sold on March 28, 1983. Both the 14% Series and the 11% Series were sold pursuant to Preferred Stock Purchase Agreements, whose relevant provisions are identical.

On December 31, 1986 PP & L redeemed all of the outstanding shares of both the 14% Series and the 11% Series. PP & L maintains that the redemptions were made

pursuant to paragraph 4N of the two Series' Purchase Agreements. Under that paragraph, PP & L agrees to indemnify the purchasers of shares in the event of the loss of the dividends received deduction provided by the Internal Revenue Code. Paragraph 4N further provides in relevant part that:

if the Company shall have made a good faith determination that there is substantial risk that it would be required to make any indemnity payments pursuant to this paragraph 4N with respect to more than two consecutive quarters (regardless of whether the Company shall have received any such written notice of Loss), then the Company, at its option, may redeem all the Shares then outstanding at the redemption price of $100 per share plus dividends accrued to the date of redemption.

According to PP & L, its redemption took place after the company had made a "good faith determination" that a provision contained in the Tax Reform Act of 1986 reducing the Dividends Received Deduction had created a substantial risk that PP & L would be required in the future to make tax indemnity payments pursuant to Paragraph 4N. Plaintiffs dispute that PP & L made a good faith determination. According to plaintiffs, defendants wrongfully redeemed the shares, which paid interest rates of 11% and 14%, in order to take advantage of the fall in interest rates by issuing new preferred shares paying substantially lower rates. According to plaintiffs, defendants have used Paragraph 4N as a pretext to redeem the shares wrongfully.

The issue currently before this Court is whether the parties agreed in the Series' Purchase Agreement to submit this dispute to arbitration. Paragraph 4N of the Purchase Agreement provides in relevant part:

if any Owner should disagree with such good faith determination of the Company that there is substantial risk, then the Company and the Owner shall appoint an independent tax counsel to resolve the dispute and, if the parties cannot agree to the appointment of such counsel, said

independent tax counsel shall be appointed by the American Arbitration Association and the Company shall not be obligated to pay, and such Owner shall not be obligated to refund, the disputed portion of such amount until and only to the extent that such dispute is resolved adversely to the party required to make payment.

PP & L contends that this language evidences the parties' intent to submit the issue of PP & L's alleged lack of "good faith" to arbitration. Plaintiffs, on the other hand, maintain that there is nothing in the Agreement which states that the parties intended to submit the issue of PP & L's "good faith" to an arbitrator, nor could there be for there never was such an intent.

### Discussion

The Court of Appeals for the Second Circuit has stated that an order compelling arbitration should not be granted unless the contract contains "a clear, explicit statement" that shows that the parties consciously decided to relinquish their rights to judicial relief in favor of arbitration. *Fuller v. Guthrie*, 565 F.2d 259, 261 (2d Cir.1977). In the present case, no such clear, explicit statement is present. Further, any doubt on the issue of the parties' intent is resolved in this case by two additional factors: (1) the conduct of PP & L following the filing of these lawsuits; (2) the uncontradicted affidavits of attorneys who were involved in the negotiations surrounding the sale of the preferred shares.

PP & L participated in this litigation for several months before claiming that the Purchase Agreement contained a provision mandating that this action be submitted to arbitration. PP & L answered complaints and interrogatories and produced documents without any reference to arbitration. Moreover, PP & L's attorneys essentially conceded in a conference before this Court that the independent tax counsel had no role in this litigation when they asked for leave to file a motion for summary judgment on the merits of the three lawsuits. PP & L's argument that they were not initially aware that the lawsuits challenged their good faith and that, therefore,

they participated in the litigation is unpersuasive. The original complaint filed in the *GEICO* action alleged that "PP & L has attempted in bad faith to utilize a protective indemnity provision created for the benefit of preferred shareholders." This certainly put PP & L on notice that at least one of the plaintiff's allegations was that PP & L had acted in bad faith.

Further, plaintiffs have supplied this Court with affidavits of attorneys involved in the negotiations of the relevant contract provisions indicating that an independent tax counsel was intended to resolve only disputes regarding the effects of newly-enacted tax laws on these preferred shares. If a dispute arose concerning PP & L's good faith, however, it was not intended that the matter would be submitted to a tax counsel for resolution.

Plaintiffs have also submitted the affidavit of James G. Goss, a Vice-President of GEICO Corporation. In negotiating the Purchase Agreement, Mr. Goss claims that PP & L never raised the possibility that a dispute over its "good faith" would be subject to arbitration by an independent tax counsel. He further states that his reaction to such a suggestion would have been to refuse to contract to purchase the shares.

### Conclusion

In light of PP & L's actions during the initial phases of this litigation, and in light of the uncontradicted affidavits submitted by plaintiffs, it is clear that the parties to the Purchase Agreement never intended that the claims in these lawsuits be submitted to arbitration. This lack of intent coupled with the absence of any clear, explicit language in the Purchase Agreement evidencing an agreement to submit this type of dispute to arbitration leads inexorably to the conclusion that defendant's motion to compel arbitration has no basis in fact or law and must be denied.

So ordered.